**IN THE DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| TOTAL GROW HOLDINGS, LLC, | § | |
| TG TECH HOLDINGS, LLC, and TGC | § | |
| SYSTEMS, LLC | § | |
| | § | |
|     Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:21-cv-354 |
| | § | |
| TENNESSEE EXTRACTS, LLC, LESLIE | § | |
| HOUGH, JOSHUA BECKMAN, KEVIN | § | |
| WOODS, and MICHAEL SHEEHAN, | § | |
| | § | |
|     Defendants. | § | |

**COMPLAINT**

Total Grow Holdings, LLC (also "Total Grow Holdings" acting as "Total Grow Control"),

TG Tech Holdings, LLC (also "TG Tech Holdings"), and TGC Systems, LLC (registered in Texas

as Total Grow Control, LLC) (also "TGC Systems") for their Complaint against Defendants

Tennessee Extracts, LLC (also "Tennessee Extracts" or "Defendant Tennessee Extracts"), Leslie

Hough (also "Hough" or "Defendant Hough"), Joshua Beckman (also "Beckman" or "Defendant

Beckman"), Kevin Woods (also "Woods" or "Defendant Woods"), and Michael Sheehan (also

"Sheehan" or "Defendant Sheehan") respectfully submit their Complaint, as follows:

**INTRODUCTION**

This matter principally involves two separate "Contract Documents" forming a transaction

(the "Transaction"). The first contract involves the sale by Total Grow Holdings (acting as Total

Grow Control) of a State of Texas manufactured "System" for the production of hemp oil and

hemp related products to Defendant Tennessee Extracts with significant construction and

installation obligations by Defendant Tennessee Extracts for integration of the System on the

production site (the "Project"), and the second contract involves the ongoing use of related licensed

"Technology" from TG Tech by Defendant Tennessee Extracts in the operation of the System.

Plaintiffs are seeking damages for violations of the contract documents by Defendants

along with seeking further damages from Defendants for ancillary actionable claims based on

defamatory conduct, interference with business relations and other lawfully actionable conduct.

TGC Systems was in no way involved in the Transaction and was established following

the execution of the Contract Documents. The establishment of TGC Systems was in significant

part to engage in a financing transaction. Nevertheless, TGC Systems is being intentionally and

unlawfully attacked and leveraged by Defendants in order for the Defendants to receive cash

payments from Plaintiffs, and in the process, Defendants are intentionally interfering with a

significant TGC Systems financing unrelated to the Contract Documents or the Project.

The Contract Documents contain specific provisions regarding disclosure of proprietary

information and confidentiality that the individual Defendants have violated. The individual

Defendants have also independently disparaged and defamed Plaintiffs and interfered with

business relationships.

## PARTIES

1.      The Plaintiff parties are each corporations doing business in the State of Texas. The

Defendant corporate party is registered and doing business in the State of Tennessee, and, on

information any belief, all individual Defendant parties are residents of the State of Tennessee.

2.      The Contract Document parties are Plaintiff Total Grow Holdings, LLC, which is a

Delaware limited liability company doing business in Texas, acting for the purposes of the

Transaction as "Total Grow Control", with its principal place of business located at 2190

Washington Avenue, Alvin, Texas 77511, and Defendant TG Tech Holdings LLC, which is a

Texas limited liability company with its principal place of business located at 2190 Washington Avenue, Alvin, Texas 77511.

3.      Defendant TGC Systems is a Nevada limited liability company (registered in Texas as Total Grow Control, LLC) with its principal place of business located at 2190 Washington Avenue, Alvin, Texas 77511.

4.      Defendant Tennessee Extracts, LLC, is a Tennessee limited liability company with its principal place of business located at 704 Swan Drive, Smyrna, Tennessee 37167 and this Defendant can be served through its attorney Jeremy Oliver of Waller Landsden Dortch & Davis, located at 511 Union St Suite 2700, Nashville, TN 37219.

5.      Defendant Leslie Hough is an individual principal, agent, and associate of Defendant Tennessee Extracts, and is located at 704 Swan Drive, Smyrna, Tennessee 37167, and this Defendant can be served through its attorney Jeremy Oliver of Waller Landsden Dortch & Davis, located at 511 Union St Suite 2700, Nashville, TN 37219.

6.      Defendant Joshua Beckman, is an individual principal, agent, and associate of Defendant Tennessee Extracts, and is located at 704 Swan Drive, Smyrna, Tennessee 37167, and this Defendant can be served through its attorney Jeremy Oliver of Waller Landsden Dortch & Davis, located at 511 Union St Suite 2700, Nashville, TN 37219.

7.      Defendant Kevin Woods, is an individual principal, agent, and associate of Defendant Tennessee Extracts, and is located at 704 Swan Drive, Smyrna, Tennessee 37167, and this Defendant can be served through its attorney Jeremy Oliver of Waller Landsden Dortch & Davis, located at 511 Union St Suite 2700, Nashville, TN 37219.

8.      Defendant Michael Sheehan is an individual principal, agent, and associate of Defendant Tennessee Extracts, and works at 704 Swan Drive, Smyrna, Tennessee 37167, and this Defendant

can be served through its attorney Jeremy Oliver of Waller Landsden Dortch & Davis, located at 511 Union St Suite 2700, Nashville, TN 37219.

## JURISDICTION, VENUE, AND GOVERNING LAW

9.      Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00 and this civil action is between citizens of different states.

10.     Venue is proper as actions giving rise to this Complaint were centered in Alvin, Texas, involved a Texas manufacturing plant, a Texas manufactured System, Texas corporation owned and licensed Technology, and a Texas related financing. Specifically, this Southern District of Texas is proper venue because that is the district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2).

11.     In 2018 and 2020, Defendant Tennessee Extracts entered into Contract Documents with Texas-based corporations, to be performed in principal part in Texas.

12.     Defendants Hough, Beckman, Woods, and Sheehan (as principals, agents, and associates of Defendant Tennessee Extracts) have individually violated confidentiality, intellectual property, and other provisions of the contract documents, have defamed the Texas corporations and have interfered with the Texas corporation's business relations, with the damage to the Defendant Texas corporations occurring in Texas.

## FACTUAL BACKGROUND

13.     Plaintiffs re-allege and incorporate herein by reference Paragraphs 1-12 of this Complaint as if the same were fully set forth in this Paragraph.

14.     Defendant Tennessee Extracts is an extractor of hemp oil and other hemp products.in Tennessee.  It operates a facility located at 704 Swan Drive, Smyrna, Tennessee 37167 (the "Facility").

15.     Plaintiff Total Grow Holdings (acting as Total Grow Control) is a manufacturing company located and doing business in Texas, that, among other business activities, sells processing equipment, and provides software, hardware, and technology infrastructure to purchasers as a "System" for hemp oil extraction. The System is incorporated in a hemp product production facility that must meet specific engineering, construction and installation parameters to operate properly as a Project. Plaintiff Total Grow Holdings (acting as Total Grow Control) sold Defendant Tennessee Extracts a System and engaged in the Project pursuant to an Equipment Purchase Agreement (the "Purchase Agreement") on or about May 14, 2019. A true and correct copy of the executed Purchase Agreement is attached hereto as **Exhibit A**.  The law of Delaware is to govern the construction of the Purchase Agreement Contract Document. The Scope of Work for the Purchase Agreement is attached hereto as **Exhibit B** (with further Amendment as **Exhibit E**).

16.     Plaintiff TG Tech Holdings is a technology company that licenses Technology (and the related intellectual property) on an ongoing basis for what are effectively royalties. The Technology relates to the System, the operation and use of the System.  On or about May 6, 2020, Defendant Tennessee Extracts and TG Tech entered into a Technology Know-How License Agreement (the "License Agreement"). A true and correct copy of the License Agreement is attached hereto as **Exhibit C**.  The law of the State of Texas is to govern the construction of the License Agreement contract document. And, by contract document heading, jurisdiction regarding actions relating to the License Agreement is to be in the State of Texas (independent the State of Texas being nexus of the System manufacture and related licensed Technology rights).

17.     Plaintiff TGC Systems is a company established for operations unrelated to the Contract Documents, established subsequent to and not involved in the Contract Documents or Project and involving different processes and systems related to "grows", with its assets to be transferred in a

transaction with a public company named GrowGeneration Corp., a Colorado Company. There was a public announcement regarding the transaction and transfer in October 2021, a true and correct copy of which is attached as **Exhibit F**.

18.     The Defendant Tennessee Extracts and related parties to the License Agreement owe significant express duties of confidentiality and non-disclosure. The System has new and pioneering Technology, that is to be used in an ongoing processing operation by Defendant Tennessee Extracts and has independent value as such.

19.     Neither Plaintiff Total Grow Holdings (acting as Total Grow Control) nor Plaintiff TG Tech Holdings were precluded from assignment of the Purchase Agreement and/or the License Agreement, and both corporations assigned the contract documents to Thompson Global Partners, LLC ("Thompson") on or about June 23, 2021 (the "Assignment"). Thompson was a fully disclosed on-site contractor regarding the System, was an owner of Plaintiff TG Tech Holdings, and was to be actively involved in the ongoing revenue generation of the Tennessee Extracts Plant, which was then coming on-line (all of which was disclosed in a "Notice for Commissioning" dated March 8, 2021, which is attached **Exhibit D**). Pursuant to the terms of the License Agreement, notwithstanding the Assignment and the indemnities therein, Plaintiff TG Tech Holdings would nevertheless still have various required rights and obligations under the License Agreement. Jurisdiction and venue pursuant to the Assignment, and any indemnity provisions therein regarding the rights and liabilities of the Plaintiff corporate parties are to be in the State of Texas.

20.     Defendant Tennessee Extracts has violated the Purchase Agreement and License agreement in a number of respects (as will be set out herein). These violations and breaches of the contract documents have precluded Plaintiff Total Grow Holdings (acting as Total Grow Control) from receiving substantial monies due under the Purchase Agreement and has preluded Plaintiff

TG Tech Holdings from receiving royalty and other related monies due under the License Agreement.

21.    Defendant Tennessee Extracts and the individual Defendant principals, agents and associates of Defendant Tennessee Extracts (specifically Defendant Hough, Defendant Beckman, Defendant Woods, and Defendant Sheehan) have violated a number of the express provisions of the contract documents (as will be set out herein) in regard to confidentiality and disclosures regarding the Technology, have defamed Plaintiffs in their businesses, have interfered with Plaintiffs' business relations, and have engaged in other lawfully actionable activity.

23.    Further key facts that, along with the facts and allegations previously alleged by Plaintiffs in Paragraph 1-22, include the following facts, without limitation, relating to the contract document arrangements and related business activities.

- Defendants were fully aware of the pioneering nature and scope of the System and the importance of the construction elements of the Project and was provided a very substantial financial discount in the Purchase Agreement and License Agreement contract documents as a result. Indeed, Defendants wanted to be one of the "first to market" with the Plaintiff Total Grow Holdings (acting as Total Grow Control) System and the Plaintiff TG Tech Holdings related Technology.

- Defendants were not truthful regarding its financial status and support at the time of the execution of the contract documents with Plaintiffs Total Grow Holdings (acting as Total Grow Control) and TG Tech Holdings.

- Defendants have been actively and unsuccessfully seeking further funding.

- Since the commencement of the Project, the economics and financial returns on hemp oil and hemp product facilities have markedly declined, and many major producers have shut down operations (either temporarily or permanently).

- Defendants (apart from the System) did not utilize commercially appropriate contractors, equipment or product supplies in the construction of the Project and the processing of hemp, which has caused and continues to cause delays, repairs and the necessity for parts replacement.

- Defendants did not use commercially appropriate hemp feed stock in the start-up of the System, which has caused delays and the necessity for extensive cleaning and repairs.

- Notwithstanding that Plaintiffs Total Grow Holdings acting as Total Grow Control) and TG Tech Holdings have provided active on-site support in 2021 leading up to and following the "notice letter" initiating a start-up (attached hereto as Exhibit D), Defendants have not actively cooperated in resolution of many expected start-up issues and completion of the Project. The following "man" days were spent on site in support of Defendants in recent months: March - 18 days; April - 6 days; May - 10 days; June - 11 days; July - 24 days; August - 28 days; September - 18 days; October 15 days. All of which constituted significant expense to Plaintiffs Total Grow Holdings (acting as Total Grow Control) and TG Tech Holdings.

- Plaintiffs Total Grow Holdings (acting as Total Grow Control), TG Tech Holdings have also supplied a smaller / test production unit to assist Defendants with interim revenue production, at their expense and at no charge to Defendants for use of the unit.

- Defendant Tennessee Extracts, and the Defendant principals, agents and associates, were fully aware (including by the press announcement in **Exhibit F**) that certain Plaintiffs were

actively in the closing stages of a major financing event, and the effect any litigation or active dispute would have on the event. Instead of actively and appropriately working with Plaintiffs to their mutual benefit in the completion of the Project and the resolution of any commercial and start-up issues, Defendants chose to "leverage" Plaintiffs for large cash payments, in significant part by actions against TGC Systems, which was not in any way involved in the Contract Documents and the Project.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Breach of Contract - Purchase Agreement

24.     Plaintiffs restate each and every allegation contained in Paragraphs 1 through 23. For the purposes of this claim, "Plaintiffs" do not include TGC Systems.

25.     Defendant Tennessee Extracts agreed to and signed what it called the "Purchase Agreement" (with the attendant Scope of Work) with Total Grow Holdings (acting as Total Grow Control).

26.     The Purchase Agreement was a binding contract between Defendant Tennessee Extracts and Plaintiff Total Grow Holdings (acting as Total Grow Control). The Contract Document is to be "…governed by and construed in conformity with the laws of … the State of Delaware, USA. (Paragraph 9, Exhibit A).

27.     Defendant Tennessee Extracts knew, based on provisions in the Contract Document, and based on billings to Defendant and payments by Defendant, that Total Grow Holdings (acting as Total Grow Control) was the party in interest regarding the execution and performance of the Purchase Agreement and in completion of the Project.

28.     In signing the Purchase Agreement, Defendant Tennessee Extracts explicitly agreed to preserve and protect Total Grow Holding's (acting as Total Grow Control) proprietary

COMPLAINT (458269)                                                                                      - PAGE 9

information, Total Grow Holding's (acting as Total Grow Control) rights in inventions and in all related intellectual property rights, and to not misuse or disclose any of Total Grow Holding's (acting as Total Grow Control) confidential and/or proprietary information.

29.     In signing the Purchase Agreement, Defendant Tennessee Extracts explicitly agreed to make payments and abide by the requirements and obligations set out in the contract document.

30.     Defendant Tennessee Extracts breached the Purchase Agreement by, at the least, the following regarding the Project:

- Use of inappropriate and industry non-compliant feed stock.

- Installation and use of inappropriate machinery, piping and fittings.

- Installation and use of inappropriate indicators and transmitters.

- Installation and use of inappropriate valves.

- Inadequate and incomplete notifications causing Plaintiff Total Grow Holdings, LLC (acting as Total Grow Control) hundreds of unnecessary manhours.

- Inadequate assistance regarding changes and extras.

- Inadequate notification of allegedly defective equipment.

- Cutting corners on equipment installs and making unauthorized System changes.

- Use of non-qualified contractors in equipment installation.

- Other material violations of the Purchase Agreement in completion of the Project.

31.     As a result of Defendant Tennessee Extract's breaches of the Purchase Agreement, Plaintiff Total Grow Holdings (acting as Total Grow Control) suffered damages to be proven at trial that singularly or when aggregated with other damages will exceed $75,000.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract - License Agreement**

32.     Plaintiff TG Tech Holdings restates each and every allegation contained in Paragraphs 1 through 31.  For the purposes of this claim, "Plaintiffs" do not include TGC Systems.

33.     Defendant Tennessee Extracts agreed to and signed the License Agreement with Plaintiff TG Tech Holdings.

34.     The License Agreement was a binding contract between Defendant Tennessee Extracts and Plaintiff TG Tech Holdings. The contract document is "… to be governed by and construed in accordance with the substantive laws of the State of Texas without giving effect to any choice or conflict of law provision." (Paragraph 8.4, Exhibit C).

35.     Defendant Tennessee Extracts knew that Plaintiff TG Tech Holdings was the party in interest regarding execution and performance of the License Agreement.

36.     In signing the License Agreement, Defendant Tennessee Extracts explicitly agreed to preserve and protect Plaintiff TG Tech Holding proprietary information, as well as Defendant TG Tech Holdings rights in inventions and in all related intellectual property rights, and to not misuse or disclose any of Defendant TG Tech's confidential and/or proprietary information.

37.     In signing the License Agreement, Defendant Tennessee Extracts explicitly agreed to make payments and abide by the requirements and obligations set out in the contract document.

38.     Defendant Tennessee Extracts breached the License Agreement by, at the least, the following:

- Ongoing and materially inadequate assistance to the on-site representative provided by Plaintiff TG Tech Holdings.

- Non-payment of "Minimum Fee Requirement" fees from and after the License Agreement "notice letter: and "Commencement Date" (Exhibit C); as well as License Agreement "default" in regard to such required payments.

- Violation of the contract document "Confidentiality and Restrictive Covenants."

- Violation of the contract document "Confidential Information" dissemination restrictions.

- Violation of the "Reports, Payments & Records" contract document provisions.

- Other material violations of the License Agreement.

39.     As a result of Defendant Tennessee Extracts breaches of the License Agreement, Plaintiff TG Tech Holdings suffered damages in an amount to be proven at trial that singularly or when aggregated with other damages are substantially will exceed $75,000.

**THIRD CLAIM FOR RELIEF**
**Defamation**

40.     Plaintiffs restate each and every allegation contained in Paragraphs 1 through 39.

41.     Defendants made false and defamatory communications concerning Plaintiffs.

42.     Defendant Tennessee Extracts, and the Defendant principals, agents and associates under the direction of and acting for and on behalf of Defendant Tennessee Extracts, made unprivileged publications of the false and defamatory communications regarding Plaintiffs, to Plaintiffs' customers and the public at large.

43.     At the time of the publication, Defendants knew these communications were false.

44.     As a result of Defendants' defamatory communications and publications concerning Plaintiffs, Plaintiffs' have been subjected to contempt, and ridicule, and have suffered damages in an amount to be proven at trial that singularly or when aggregated with other damages will exceed $75,000.

**FOURTH CLAIM FOR RELIEF**
**Intentional Interference with a Business Expectancy**

45.      Plaintiffs restate each and every allegation contained in Paragraphs 1 through 43.

For the purposes of this claim, "Plaintiffs" do not include TGC Systems.

46.      Plaintiffs possessed a valid business expectancy in being able to produce and sell

Systems and license Technology to customers at a profit, while retaining confidential

proprietary information related to the production of the Systems and licensed Technology.

47.      Defendants had knowledge of this business expectancy and were aware of the need

for Plaintiffs to protect their customer base and the confidentiality of proprietary information;

in order to efficiently and effectively produce and sell their Systems and license their

Technology.

48.      Defendant Tennessee Extracts, and the Defendant principals, agents and associates

under the direction of and acting for and on behalf of Defendant Tennessee Extracts,

intentionally and improperly interfered with Plaintiffs' business expectancy by disclosing

confidential and proprietary information.

49.      Defendants caused damage to Plaintiffs as a result of their efforts  to disrupt

Plaintiffs business relationships and expectancies.

50.      As a result of Defendants deliberate and intentional actions, Plaintiffs have suffered

damages in an amount to be proven at trial that singularly or when aggregated with other

damages are will exceed $75,000.

### FIFTH CLAIM FOR RELIEF
### Misappropriation of Trade Secrets

51.      Plaintiffs restates each and every allegation contained in Paragraphs 1 through 50.

For the purposes of this claim, "Plaintiffs" do not include TGC Systems.

52.      Plaintiffs possessed valid trade secrets in the proprietary information related to the

creation, production, and sale of the Systems and the licensing of Technology.

---

53.     Proprietary and confidential trade secret information was accessed, obtained, disclosed and/or used by Defendants without the consent of Plaintiffs.

54.     Defendants knew, or should have known, the proprietary, confidential, trade secret information relating to the Systems and Technology was disclosed without any of Plaintiffs' consent or permission.

55.     As a result of Defendants misappropriation of Plaintiffs' trade secrets related to Systems and Technology, Plaintiffs have suffered damages in an amount to be proven at trial that singularly or when aggregated with other damages will exceed $75,000.

## SIXTH CLAIM FOR RELIEF
### Breach of the Implied Covenant of Good Faith and Fair Dealing

56.     Plaintiffs allege and incorporate herein paragraphs 1 through 54. For the purposes of this claim, "Plaintiffs" do not include TGC Systems.

57.     The Purchase Agreement and License Agreement each contain implied covenants by Defendant Tennessee Extracts, and an associated duty, that Defendant Tennessee Extracts and its Defendant principals, agents and associates will act in good faith and deal fairly with Plaintiffs; including that they would do nothing to interfere with the rights granted to Plaintiffs.

58.     Defendants' improper efforts to delay, reduce or avoid obligations with respect to the Purchase Agreement and the License Agreement were and are unreasonable and constitute bad faith.

59.     The improper conduct by Defendants includes, among other things, the numerous improper actions and inactions described throughout this Complaint.

60.     In so doing, Defendant Tennessee Extracts has improperly put its own financial interests, and the personal financial interests of the Defendant principals, agents and associates,

above the interests of contracted party participants in the Purchase Agreement and License Agreement and above obligations to the contracted party participants in the Purchase Agreement and the License Agreement.

61.      Defendants also have done all of this with the clear intention of avoiding or delaying its obligations, pressuring Plaintiffs to accept financial payments and the attendant losses, and with what appears to be intended ill-will toward all Plaintiffs.  There is almost no other way to describe this level of severe misconduct.  As a result, Defendant's bad faith conduct was also willful and malicious, and warranting additional civil punishment.

62.      By these actions and inactions, Defendants have breached the covenants of good faith and fair dealing with respect to the Purchase Agreement and the License Agreement, as well as in their related activities involving Plaintiffs, and have conducted themselves tortiously in bad faith.

63.      As a direct and proximate result of the above-referenced bad faith by Defendants, Plaintiffs have suffered and will continue to suffer damages that singularly or when aggregated with other damages will exceed $75,000.  These damages will include Plaintiffs' attorney's fees in prosecuting this Complaint as well as punitive damages.

**SEVENTH CLAIM FOR RELIEF**
**Tortious Interference with Existing Contractual Relationships**

64.      Plaintiffs restate each and every allegation contained in Paragraphs 1 through 64. For the purposes of this claim, "Plaintiffs" do not include TGC Systems.

65.      Plaintiffs have valid, subsisting contracts their own customers and third parties. Defendants have willfully and intentionally interfered with these contracts through the conduct set out in this Complaint.

66.        As a result of Defendant's conduct, and as a proximate cause of such conduct, Plaintiffs have suffered actual damages in an amount to be proven at trial, that singularly or when aggregated with other damages will exceed $75,000.

### EIGTH CLAIM FOR RELIEF
### Conspiracy to Intentionally Interfere with Business Relations

67.        Plaintiffs restate each and every allegation contained in Paragraphs 1 through 66. For the purposes of this claim, "Plaintiffs" do not include TGC Systems.

68.        Plaintiffs possess a valid business relationship with its customers and third parties in being able to manufacture, produce and sell products to customers at a profit, while retaining confidential proprietary information related to the sale of System(s) and the licensing of Technology.

69.        Defendants had knowledge of this business relationships.

70.        Defendants engaged in a systematic campaign to destroy the reputation and business of Plaintiffs and deprive Plaintiffs of their customers and business relations.

71.        Defendants committed overt acts in furtherance of Defendants' plan and campaign to interfere with Plaintiffs' business relations by inducing and/or attempting to induce Plaintiffs' customers to terminate their relationship with any or all of Plaintiffs.

72.        Defendants also attempted to improperly interfere with Plaintiffs' business relations by disseminating disparaging and/or false information, overtly and/or anonymously, about Plaintiffs and the System(s) and licensed Technology.

73.        Defendants caused damage to Plaintiffs as a result of their attempt to disrupt and damage Plaintiffs' business relationships.

74.     As a result of Defendants actions in furtherance of its interference with Plaintiffs' business relations, Plaintiffs have suffered damages in an amount to be proven at trial, which singularly or when aggregated with other damages will exceed $75,000.00.

## NINTH CLAIM FOR RELEIF
### Corporate Disparagement

75.     Plaintiffs restate each and every allegation contained in Paragraphs 1 through 74.

76.     Plaintiffs possessed valid business relationships with its customers, clients and third parties in being able to manufacture, produce and sell System(s) and license Technology at a profit, while retaining related confidential proprietary information.

77.     Defendants had knowledge of these business relationships. Defendants disseminated disparaging and/or false statements and information to Plaintiffs' customers and potential customers, overtly and/or anonymously, so as to impair their reputation. Defendants knew these disparaging and/or false statements were made to Plaintiffs' customers.

78.     By communicating this disparaging and/or false information Defendants intended to harm Plaintiffs by causing Plaintiffs current customers to terminate or modify their relationship and/or particular contracts with Plaintiffs, and/or by causing Plaintiffs prospective customers not to enter into contractual agreements with Plaintiffs.

79.     Defendants intentionally and improperly communicated this disparaging and/or false information overtly and/or anonymously which resulted in certain of Plaintiffs customers terminating, adjusting, modifying or delaying their commercial relationship with Plaintiffs.

80.     Defendants' disparaging and/or false statements were neither justified nor privileged.

81.     Defendants' disparaging and/or false statements have disrupted and damaged Plaintiff's relationship with both current and prospective customers and continues to do so.

82.      Defendants' disparaging and/or false statements about Plaintiffs were made in malice and not in good faith for any justifiable purpose.

83.      Defendants' disparaging and/or false statements about Plaintiff has caused and continue to cause Plaintiffs irreparable harm to its financial interests in the form of special damages. As a result of Defendants' disparaging and/or false statements, Plaintiffs have has suffered special damages in an amount to be proven at trial, which singularly or when aggregated with other damages will exceed $75,000.00.

## TENTH CLAIM FOR RELIEF
### Corporate Defamation

84.      Plaintiffs restate each and every allegation contained in Paragraphs 1 through 83.

85.      The written and oral statements made by Defendants was defamatory because it was stated that Plaintiffs ware engaging in conduct that was unauthorized and/or unlawful.

86.      Defendants acted with malice, for improper purposes and without any justification for their actions. Plaintiffs' have suffered actual and special damages as a result.

87.      As a result of Defendants' disparaging and/or false statements, Plaintiffs have suffered actual and special damages in an amount to be proven at trial, which singularly or when aggregated with other damages will exceed $75,000.00.

## ELEVENTH CLAIM FOR RELIEF
### Fraud And Fraudulent Misrepresentations

88.      Plaintiffs restates each and every allegation contained in Paragraphs 1 through 87. For the purposes of this claim, "Plaintiffs" do not include TGC Systems.

89.      Defendants falsely and fraudulently misrepresented their financial status and capabilities in the negotiation and execution of the Purchase Agreement and the License Agreement.

90.        Defendants knew their misrepresentations were false when made and/or should

have known they were false when they were made.

91.        As a result of Defendants fraud and false and fraudulent misrepresentations,

Plaintiffs have suffered actual and special damages in an amount to be proven at trial, which

singularly or when aggregated with other damages will exceed $75,000.00.

**TWELVTH CLAIM FOR RELIEF**
**Regarding Plaintiff TGC Systems**
**Intentionally Interfering with Business Relations and**
**Conspiracy to Intentionally Interfere with Business Relations**

92.        Plaintiff TGC Systems and Plaintiffs restate each and every allegation contained in

Paragraphs 1 through 91.

93.        Plaintiff TGC Systems possessed a valid business relationship regarding the sale of

assets with GroGeneration Corp.

94.        Defendants had knowledge of this business relationship.

95.        Defendants engaged in a systematic campaign to interfere with the TGC Systems

business relationship, and to leverage cash payments in the process from Plaintiffs.

96.        Defendants committed overt acts in furtherance of Defendants' plan and campaign

to interfere with TGC Systems business relations.

97.        Defendants caused damage to TGC Systems as a result of their attempt to disrupt

and damage TGC Systems business relationship.

98.        As a result of Defendants actions in furtherance of its interference with TGC

Systems business relations, TGC Systems and Plaintiffs have suffered damages in an amount

to be proven at trial, which singularly or when aggregated with other damages will exceed

$75,000.00.

---

**COMPLAINT** (458269)                                                          **- PAGE 19**

## JURY DEMAND

99.     Plaintiff demands a trial by jury

## PLAINTIFS' CONCLUSION AND PRAYER FOR RELIEF

100.    **On All Causes of Action, Plaintiffs pray for:**

1.      For a trial by jury of twelve on all issues triable to a jury as a matter of right.

2.      For compensatory damages, including attorney's fees, in an amount to be proved at

        trial.

3.      For punitive damages, as and where alleged and appropriate in law, for an amount

        sufficient to punish and make an example of Defendants.

4.      For costs.

5.      For interest.

6.      For such other relief as the Court may deem just and proper.

                                Respectfully submitted,

                                Passman & Jones,
                                A Professional Corporation

                                By: */s/ D. Hunter Polvi*
                                    D. Hunter Polvi
                                    State Bar No. 24083674
                                    Jerry C. Alexander
                                    State Bar No. 00993500
                                    1201 Elm Street, Suite 2500
                                    Dallas, Texas 75270-2599
                                    Telephone:  (214) 742-2121
                                    Facsimile:  (214) 748-7949
                                    polvih@passmanjones.com

                                    *Attorneys for Plaintiffs*
                                    *Total Grow Holdings, LLC, TG Tech Holdings,*
                                    *LLC, and TGC Systems, LLC*